IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAILIN NICOLE SOLOFF *(Pro Se)*, and
DYLAN MICHAEL SOLOFF *(Pro Se)*,

       Plaintiffs,

       v.

EDWARD J. AUFMAN, WILLIAM J.
GAFFEY, and AUFMAN ASSOCIATES,
INC.

       Defendants.

17cv1500

ELECTRONICALLY FILED

**MEMORANDUM OPINION
DENYING PLAINITFFS' MOTION FOR RECUSAL (DOC. NO. 67)**

**I.**       **Summary of the Case**

Plaintiffs' Amended Complaint identifies Plaintiffs as college students currently

attending the University of Southern California. Through the statements set forth in the

pleadings submitted by the Parties, as well as the documents related to certain Trusts and

Accounts, some which have been attached to the pleadings and the various motions and

responses filed in this case, it appears that Plaintiffs are dissatisfied with their grandfather's

provision of financial gifts to them (either directly or indirectly through their mother), but have

elected to sue Defendants – who were and are the grandfather's financial and investment

advisors – instead of their grandfather. Plaintiffs' pleadings, as well as their Motions and

Responses to Defendants' Motions, illustrate their belief that Defendants exploited, extorted,

and/or misappropriated funds in said Trusts and Accounts, resulting in Plaintiffs' inability to

obtain the funds they want from these financial vehicles.

Although it appears that Plaintiffs were <u>not</u> direct beneficiaries of some, if not all, of their grandfather's various Trusts and other investment vehicles, and although it appears that Defendants have no fiduciary relationship with Plaintiffs or other duty to Plaintiffs, the Court has permitted this case to proceed up to this point in time, because Plaintiffs are *pro se* and because the Court believed all Parties would benefit from the mandatory Alternative Dispute Resolution ("ADR") process and the pre-ADR discovery which this Court ordered.

To assist the Parties in obtaining a cost-effective, independent evaluation of this case, by a subject matter expert, the Court ordered the Parties to participate in an Early Neutral Evaluation ("ENE") pursuant to the ADR program established by Local Rule 16.2, and consistent with Plaintiffs' own request. Doc. no. 16, page 13, item 15. Further, the Court recommended the Parties retain, as the ENE Neutral, one of Pittsburgh's leading estates and trusts attorneys, at a cost of $3,000 per side. Doc. nos. 19, 24, 48, 70, 74.

Instead of participating in good faith in the ENE process, Plaintiffs, through their motion practice, began attacking Defendants, their counsel, the ENE Neutral (doc. no. 70, pages 3-4), and now, finally, the Court (doc. no. 67), as set forth in more detail below. It has become readily apparent that these *pro se* Plaintiffs are quite skilled in these legal matters, as demonstrated by their Complaint (doc. no. 5), Amended Complaint (doc. no. 49), and their extensive motion practice.

Presently before the Court is Plaintiffs' Motion for Recusal (doc. no. 67) and Defendants' Response in Opposition thereto. Doc. no. 71. After careful consideration, the Court denied Plaintiffs' Motion for Recusal on July 5, 2018 (see doc. no. 75), and now has prepared the following Memorandum Opinion to explain its decision.

## II.    Case History

### A.  First Federal Lawsuit in the Western District of Pennsylvania

Plaintiffs filed their first federal lawsuit in the Western District of Pennsylvania on July 10, 2017, on behalf of themselves and their two minor siblings.  Doc. no. 3 in case no. 17-cv-00908.  At that time, Plaintiffs also filed a request to file the matter *in forma pauperis*, which this Court immediately granted.  Doc. nos. 1 and 2.  However, after reviewing the Plaintiffs' Complaint, Defendants' Motion to Dismiss, Plaintiffs' Response, and Defendants' Reply, on September 27, 2017, this Court held as follows:

> This Court finds, based on the Adult Plaintiffs' Complaint and other filings, that the mother of both the Adult and Minor Plaintiffs is living and capable of bringing claims on behalf of her two minor children.  In addition, there are no alleged facts in the lengthy Complaint, nor in any of the Adult Plaintiffs' Briefs, as to why the two Adult Plaintiffs have any authority to sue on behalf of their siblings. . . . Thus, this Court concludes that the Plaintiffs' mother would be the best representative of the minor children's claims.
>
> Given this decision, the Court will grant the Defendants' Motion to Dismiss without prejudice, due to the lack [of] capacity for the Adult Plaintiffs to sue on behalf of the Minor Plaintiffs.

Doc. no. 18, p. 6-7, case no. 17-cv-00908.

### B.  Second Federal Lawsuit in the Western District of Pennsylvania

Shortly thereafter, on November 17, 2017, Plaintiffs filed the instant lawsuit, again by seeking this Court's leave to file a Complaint *in forma pauperis*, which this Court (again) immediately granted.  Doc. nos. 1 and 2.  This time, the Complaint only asserted claims on behalf of the Adult Plaintiffs – Cailin and Dylan Soloff – and Defendants filed an Answer to same.  Doc. nos. 5 and 9.

### C. Rule 26(f) Conference and Report

Next, Plaintiffs, who reside in the state of California, filed a Motion to Appear via Skype, Facetime, or conference call at the Rule 26(f) conference.  Doc. no. 14.  This Court granted Plaintiffs' request, and the Rule 26(f) conference was conducted by the Parties.  Doc. nos. 15 and 16.  In the Rule 26(f) Report of the Parties, filed by the Parties on March 26, 2018 (doc. no. 16), Defendants indicated that the ADR process would likely be fruitless because they did not intend to make "any monetary offer."  Id.  In this same Report, Plaintiffs noted that "Defendants [were] adamantly opposed to any type of Alternative Dispute Resolution, believing it would not be fruitful to either party, as they have [sic] they do not intend on settling this matter.  Plaintiffs opposed that viewpoint and were strongly in favor of ADR.  Prior to the 'confer' [P]laintiffs were open to either ENE or Mediation."  Id. (emphasis added.)

### D. Initial Case Management Conference and the ADR Process

On April 4, 2018, the Court held its Initial Case Management Conference in this matter at which time Plaintiff Cailin Soloff was present, and indicated to the Court that she was authorized to speak on behalf of her brother, Plaintiff Dylan Soloff, who could not attend due to school commitments.  During this conference, the Court discussed the Rule 26(f) Report, sided with Plaintiffs, and ordered an ENE to take place with a qualified Neutral.  The Court further ordered as follows:

> . . .  (1) Plaintiffs (and Defendants) should serve and file, on the docket, formal request for production of documents on or before April 13, 2018; (2) The opposing Party should serve and file, on the docket, responses and objections to those requests on or before April 23, 2018; (3) Any documents which exist and are responsive to a request, shall be produced by a Party to the opposing Parties by April 30, 2018; and (4) The Parties are to attend an Early Neutral Evaluation, preferably before Sam Goncz of Cohen & Grigsby, if Mr. Goncz can preside as the neutral evaluator in this matter after performing a conflict check. If Mr. Goncz can handle this matter as an evaluator, he is to be paid $6,000 in a fee, by the Parties (50%

of his fee to be paid by the Plaintiffs, and 50% to be paid by the
Defendants) in advance of the evaluation meeting.

See Text Order at doc. no. 19.

### E. Plaintiffs' Request for a "Free" ENE and "Free" ADR Counsel

Following this conference, on April 10, 2018, Plaintiffs filed a Motion seeking the

appointment of *pro bono* counsel to represent them at the ADR proceeding.  Doc. no. 22.  On

April 11, 2018, the Parties filed a Stipulation selecting an ADR process wherein they indicated

that they had selected ENE for their ADR process, and noted that Sam Goncz[1] would serve as the

Neutral.  Doc. no. 24.  Also, on April 11, 2018, Plaintiffs requested that the Court also waive

their *pro rata* share of the Neutral's fee.  Doc. no. 25.  The Court denied the Plaintiffs' request

for a *pro bono* attorney (without prejudice) and for a waiver of the Neutral fee.  In reaching this

decision the Court noted:

> In effect [Plaintiffs] want the [N]eutral to perform an important service to
> Plaintiffs for free. Given the complex nature of this case and the age of the
> Trusts at issue, this case will undoubtedly cost each Party much more than
> $3,000 if they proceed through discovery and ultimately to trial, and it is
> unfair to expect the neutral to work for 50% of his already reduced rate. If
> each Party does not pay their fair share of $3,000 to the [N]eutral by May
> 4, 2018, the Court will cancel the ENE Stipulation and exempt this case
> from the ADR procedure.

Doc. no. 26.  With respect to Plaintiffs' Motion for a *pro bono* attorney, the Court held:

> The Court also DENIES, without prejudice, Plaintiffs' Motion for a Pro
> Bono Attorney to Represent Plaintiffs at ADR Early Neutral Evaluation
> (doc. no. 22). The Court will reconsider this Motion for a Pro Bono
> Attorney if and when the record becomes clear as to whether the ENE will
> proceed. In sum, the Court is denying Plaintiffs' request for a free ENE
> process and for a free attorney at the ENE, but is willing to reconsider
> appointing a pro bono attorney for the ENE once the docket reflects that
> the payments have been made to the neutral evaluator and that the ENE
> will proceed.

---

[1] It is noteworthy that the Court in its April 4, 2018 Order indicated that Sam Goncz was preferred, not
required, to serve as a Neutral, and that he worked for the law firm of Cohen & Grigsby in Pittsburgh.

Id. (emphasis added.)

## F.  Pre-ENE Discovery and Motions Practice

Following the entry of the April 4, 2018 Order, the Parties engaged in pre-ENE

discovery, which primarily consisted of an exchange of documents, with the goal of having a

robust and meaningful ENE.  Doc. nos. 27, 28, 29, 32, 33, and 42.  During the course of this

discovery, Plaintiffs and Defendants filed various Motions against one another claiming that

each side had failed to comply with the other's document production requests.  See Defendants'

Motion to Quash Subpoenas (doc. no. 30), which this Court denied as moot (doc no. 31); see also

Plaintiffs' Motion to Compel (doc. no. 34), Defendants' Opposition to Plaintiffs' Motion to

Compel (doc. no. 37), Plaintiffs' Reply to Responses filed by Defendants (doc. no. 38), which

this Court granted in part and denied in part (doc. no. 45).  In addition, Plaintiffs filed a Motion

seeking additional time to pay the Neutral their fifty percent share of his fee (doc. no. 46),

Defendants filed a Response (doc. no. 47), and the Court granted Plaintiffs' request for this

extension of time.  Doc. no. 48.

## G.  Amended Complaint and Additional Motions Practice

On May 15, 2018, Plaintiffs filed an Amended Complaint.[2]  Doc. no. 49.  Ten days later,

on May 25, 2018, Plaintiffs filed a Motion for Sanctions and a Motion to Compel Discovery.

Doc. no. 50.  On June 1, 2018, Defendants filed a Motion to Strike attachment 1 to the Amended

Complaint.  Doc. no. 52.  On June 4, 2018, Defendants filed their own Motion to Compel (doc.

no. 54), an Answer to the Amended Complaint (doc. no. 56), and a Response to Plaintiffs'

---

[2] In the Amended Complaint, Plaintiffs assert claims for conversion, fraud and/or constructive fraud, breach of fiduciary duties, professional negligence, intentional infliction of emotional distress, and violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law.  Plaintiffs further assert that as alleged beneficiaries of various Trusts and Accounts, they have been harmed and are entitled to an accounting, the appointment of a guardian *ad litem*, compensatory damages, punitive damages, attorneys' fees, interests, and costs.

Motion for Sanctions and Motion to Compel.  Doc. no. 57.  Plaintiffs filed a Response to

Defendants' Motion to Strike Attachment 1 from the Amended Complaint (doc. no. 58, filed on

June 9, 2018), a Response to Defendants' Motion to Compel Discovery (doc. no. 59, filed on

June 11, 2018), and a Motion to Strike Defendants' Affirmative Defenses found in the Answer to

the Amended Complaint (doc. no. 60, filed on June 18, 2018).  On June 21, 2018, the Court

entered an Order denying Plaintiffs' Motion for Sanctions and to Compel (doc. no. 50); granting

Defendants' Motion to Strike attachment 1 to the Amended Complaint (doc. no. 52); and

granting, in part, Defendants' Motion to Compel (doc. no. 54) and denying Plaintiffs' Motion to

Strike (doc. no. 60).  Doc. no. 63.

### H.  Additional Motion Practice by Plaintiffs

Following the Court's entry of its June 21, 2018 Order, the Court was hopeful that this

matter would proceed as scheduled, and that the ENE would be held on or before June 29, 2018

(doc. no. 48), with the Parties present and actively participating as per the Court's instruction.

However, on June 24, 2018, Plaintiffs filed a "Motion to Strike Defendants Affirmative

Defenses, [and] Reconsideration of Memorandum Order for Fraud Upon the Court" (hereinafter

"Reconsideration Motion").  Doc. no.  64.

### I.  Plaintiffs' Complaint Against Neutral and the ENE Process

In their Reconsideration Motion (doc. no. 64), Plaintiffs expressed their displeasure with

the Court's June 21, 2018 Order – the first Order of Court in which this Court did not rule in

Plaintiffs' favor – and also indicated that they had just discovered that the Neutral had a "conflict

of interest," and thus, claimed he could not serve as a Neutral during the ENE.[3]  Plaintiffs asked

---

[3] The conflict of interest, per Plaintiffs, centered on a previous lawsuit filed by these same Plaintiffs in the
Middle District of Florida (*Cailin Soloff, et al. v. Roetzel and Andress, Cathy Reiman, Esquire, Lorna
Scharlachen, Esquire and Tamara Nicola, Esquire,* Civil Action No. 2:17-cv-00426 (M.D. Fla.) "the
Florida Lawsuit").  In this Florida Lawsuit, one of the Defendants named therein, Lorna Scharlachen, was

this Court to reconsider its Order (doc. no. 63). In addition, their Reconsideration Motion (doc. no. 64) suggested that the alleged "conflict of interest" was proof that the Court, the Neutral, the Florida Lawsuit Defendant(s), and the Defendants' counsel in the instant case were all conspiring against Plaintiffs' interests. Finally, in this Reconsideration Motion, Plaintiff Cailin Soloff implied that she was now too afraid to attend the ENE, by stating as follows:

> The SOLE Plaintiff scheduled to appear at that "ENE" is a twenty[-]year old, female, college student that resides in California and attends the University of Southern California. She will not be attending any "ENE" in which three, male attorneys in Pennsylvania have "conspired" to "extinguish" the claims of Plaintiffs in a Pennsylvania Federal Court. The "three" male attorneys are beginning to frighten, the "only" female college student, who is only twenty-years old and "not" an attorney.

Doc. no. 64, p. 12 (emphasis added). Plaintiffs' Reconsideration Motion also stated that their neighbor is a public defender in Orange County, California and that they feel "more safe sharing the information with him." Id. The last section of this Motion (doc. no. 64) states as follows:

> WHEREFORE, Plaintiffs are respectfully declaring Fraud Upon the Court and Requesting an Attorney be appointed for Plaintiffs in Pennsylvania and Defendants['] Affirmative Defenses be Stricken and Memorandum Order Reconsidered for Fraud Upon the Court.

Id., p. 13.

### J. Defendants' Response and the Court's Ruling

On June 25, 2018, Defendants filed a Response to Plaintiffs' Reconsideration Motion (doc. no. 65), and on June 27, 2018, this Court issued its Order denying Plaintiffs' Reconsideration Motion, thereby upholding the decisions it rendered in the Order entered on June 21, 2018 at doc. no. 63, as well as the Order entered on April 12, 2018. Doc. no. 66. The Court explained that under the law, specifically *Max's Seafood Café Max's Seafood Café by Lou*

---

a former Cohen & Grigsby attorney, who worked for the law firm's Naples, Florida office. The Florida Lawsuit was dismissed by that Court on January 30, 2018, after Plaintiffs filed a Motion for Voluntary Dismissal.

*Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999), it could not and would not reconsider its June 21, 2018 Order.

With respect to its April 12, 2018 Order (which denied, without prejudice, Plaintiffs' renewed request for *pro bono* counsel), the Court concluded that "[g]iven the extremely late nature of the request and the fact that this case involves a complex matter and a lengthy factual and legal history, it would be impossible for a *pro bono* attorney to be first appointed, run a conflict check, and adequately learn the factual and legal intricacies of this matter in order to be able to provide sound legal advice and advocacy by June 29, 2018."

### K. The Benefit to the Parties of the Early Neutral Evaluation

The Court further noted in this June 27, 2018 Order (doc. no. 66), that the ADR proceeding was an ENE with the goal of providing the Parties with an objective, impartial review of: (1) the claims asserted by Plaintiffs, as well as (2) the defenses asserted by Defendants," and concluded that because settlement was not likely to be discussed – especially given the acrimonious nature of the motions and Defendants' earlier position that they did not intend to make a monetary offer – an advocate for Plaintiffs was not warranted at this juncture.  The Court summed up its position on this issue stating:

> The ultimate goal of the Neutral at this upcoming ENE is to convey to the Parties the strengths and weaknesses of their respective claims and defenses and invite discussion openly, in a non-confrontational forum. Therefore, the need to retain an advocate for Plaintiffs is not germane to the upcoming ENE proceedings. For all of these reasons, the Court hereby DENIES Plaintiffs' request for a *pro bono* attorney.

Id. at 66.

### L.  The Court-Ordered Court Reporter

However, the Court, in this same June 27, 2018 Order, and again, in an effort to assist the

Parties in achieving a productive ENE – and to a lesser extent, diminish the "fear" Plaintiff

Cailin Soloff claimed to be having – ordered that the Neutral:

> . . . retain or hire a court reporter or stenographer to attend this ENE on
> June 29, 2018, to record all that is said by the Neutral and the Parties.  The
> Parties will equally bear the full cost of the attendance of the court
> reporter or stenographer. (This cost is in addition to the Neutral fee, which
> has already been paid in full, equally, by both Parties.)  Although this
> transcript will not be filed on the docket, it will assist the Parties
> accurately recall what is discussed by one another and the Neutral during
> the ENE.  By having a full and complete record of this proceeding, if the
> Parties wish to pursue mediation or some other form of settlement prior to
> the trial of this matter, this transcript may prove to be valuable to the
> Parties' mediator.

Id.

### M.  Plaintiffs' Failure to Attend and Participate in the ENE Requested by Plaintiffs

On June 29, 2018, Plaintiffs failed to attend the scheduled ENE.  Report of Neutral at

doc. no. 70, at p. 1.  They did not appear either in person or by telephone.  Id.

### N.  Plaintiffs' Motion for Recusal

Instead, Plaintiffs filed the instant Motion for Recusal of the Trial Judge (doc. no. 67),

and one day later, on June 30, 2018, demanded that the Neutral refund them their share of his fee

($3,000.00) for their failure to attend the ENE and their failure to comply with a Court Order.

Report of Neutral at doc. no. 70, p. 3-4.  On July 3, 2018, Defendants filed a Response in

Opposition to Plaintiffs' Motion for Recusal.  Doc. no. 71).  This Court denied the Motion for

Recusal on July 5, 2018, for the reasons set forth herein.

### III.  Legal Standard

Title 28 U.S.C. § 455 reads, in pertinent part, as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

### IV.  Discussion of the Court-Ordered ENE Process

Plaintiffs' Motion for Recusal primarily focuses on the fact that this Court, at Plaintiffs' own request, ordered the Parties to attend an ADR session with an expert in the field of estates and trusts law.  Indeed, the ADR Program in the United States District Court for the Western District of Pennsylvania mandates that every litigant attend an alternative dispute resolution session with a qualified professional, and this Court makes very few exceptions.  This Court routinely requires litigants to utilize one of the various ADR options in every type of lawsuit, because ADR sessions provide the opposing parties with an opportunity to voice their grievances via a more cost-effective process than a trial, which ultimately promotes judicial economy.

Because this Court and his colleagues have years of experience compelling parties, such as those present here, to utilize one of the ADR processes, this Court has found that once the parties are provided with the ADR tools to settle their dispute, they frequently do so without further need of this Court's intervention, either during the ADR session, or in the days and weeks that follow.

One of three ADR options from which litigants may choose, is an Early Neutral Evaluation or the "ENE" process. The ADR Policies and Procedures defines the ENE process as follows:

> "Early Neutral Evaluation" refers to a nonadjudicative, third-party intervention by an impartial experienced attorney, selected by the parties, with subject matter expertise. After reviewing concise presentations of the parties' claims, the neutral provides a non-binding evaluation of the case and thereafter is available to assist the parties in reaching an agreement.

Section 1.2 of the ADR Policies and Procedures.

The ENE process is described in Section 4.1 of the Court's ADR Policies and Procedures as a confidential session wherein the parties and their counsel "make compact presentations of their claims and defenses, including key evidence as developed at that juncture, and receive a non-binding evaluation by an experienced neutral lawyer, selected by the parties, with subject matter expertise. The evaluator also helps identify areas of agreement, offers case-planning suggestions and, if requested by the parties, settlement assistance." Sections 4.2 and 4.3(A) of the Court's ADR Policies and Procedures note that the only civil cases eligible for an ENE process are those where a Judge assigns an evaluator with subject matter expertise who is available during the appropriate time period and has no apparent conflict of interest.

The ENE process is further described as an informal session where the Rules of Evidence do not apply, where there is no formal examination or cross-examination of witnesses, and where no recording of the presentations or discussions is made. Section 4.1(B) of the ADR Policies and Procedures. Finally, the actual ENE Procedure itself is outlined in Section 4.9(A) of the ADR Policies and Procedures as follows:

> Unless otherwise agreed to by the parties and evaluator, the evaluator must:

1. Permit each party (through counsel or otherwise), orally and through documents or other media, to present its claims or defenses and to describe the principal evidence on which they are based;

2. Help the parties identify areas of agreement and, where feasible, enter stipulations;

3. Assess the relative strengths and weaknesses of the parties' contentions and evidence, and explain the reasoning that supports these assessments;

4. Estimate, where feasible, the likelihood of liability and the dollar range of damages;

5. Help the parties devise a plan for sharing the important information and/or conducting the key discovery that will equip them as expeditiously as possible to enter meaningful settlement discussions or to position the case for disposition by other means;
6. Help the parties assess litigation costs realistically;

7. If the parties are interested, help them, through private caucusing or otherwise, explore the possibility of settling the case; and

8. Determine whether some form of follow up to the session would contribute to the case development process or to settlement.

In this case, prior to the Initial Case Management Conference, Defendants were opposed to attending an ADR session, claiming it would be "fruitless," because Defendants did not intend to make a monetary offer. [4]  See doc. no. 16, p. 4-5.  Conversely, Plaintiffs communicated their desire to have an ADR session on or before May 31, 2018.  Id., p. 5.  The Report of the Rule 26(f) meeting reads in relevant part:

> Plaintiffs opposed [Defendants'] viewpoint and were strongly in favor of ADR.  Prior to the "confer" plaintiffs were open to either ENE or Mediation.  Based on Defendants negative views of the ADR process, plaintiffs now feel that neither party would benefit from mediation and would best be served by an Early Neutral Evaluator with expertise in the subject matter.  Plaintiffs anticipate that the time frame should begin as early as possible with resolution occurring on or before May 31, 2018.

---

[4] Section 2.8 of the Court's ADR Policies and Procedures reads, "A refusal to make an offer or a demand shall not exempt ADR participation. The parties may either elect to move forward with the mediation session or proceed to Early Neutral Evaluation (ENE)."

Id.

The above-quoted Report, in conjunction with discussion with the Parties' and their counsel during the Court's April 4, 2018 Initial Case Management Conference, this Court indicated in its minute entry that during the conference the Parties were ordered to attend and participate in an ENE session. See Minute Entry at doc. no. 19. The Court also recommended during the conference that the Parties select a Neutral with expertise in estates and trusts law and suggested:

> . . . Sam Goncz of Cohen & Grigsby, if Mr. Goncz can preside as the neutral evaluator in this matter after performing a conflict check. If Mr. Goncz can handle this matter as an evaluator, he is to be paid $6,000 in a fee, by the Parties (50% of his fee to be paid by the Plaintiffs, and 50% to be paid by the Defendants) in advance of the evaluation meeting.

Id.

In addition, based on comments made by counsel for Defendants and Plaintiff Cailin Soloff at the Initial Case Management Conference, the Court ordered pre-ADR session discovery, primarily in the form of document exchanges and provided the Parties with deadlines for compliance. Id. All of the documents this Court ordered produced, sought by either side, were due to the opposing side by April 30, 2018, thereby keeping this matter on track for an ENE session on or before May 31, 2018 – the ADR deadline requested by Plaintiffs.

On April 10 and 11, 2018, Plaintiffs requested a *pro bono* attorney attend the ENE on their behalf (doc. no. 22), and also requested that the Court waive their *pro rata* share ($3,000.00) of the Neutral's fee. Doc. no. 25. As this Court explained in its Memorandum Order, the Neutral had agreed to review, at reduced rate, all relevant materials – which would necessarily have included the pleadings, the documents comprising two different Trusts that were described in the Complaint (a 1978 Trust instrument and a 1994 Trust instrument), and any

other documentation provided by the Parties at their behest or as requested by the Neutral.  Id.

Documentation of this sort would have been necessary to provide the Neutral with sufficient

data, so that he could, in turn, provide the Parties with a neutral evaluation of their respective

claims and defenses.  Because this Court deemed this case to be a more complex estates and

trusts matter, due to the number and nature of the claims raised by Plaintiffs, and thus, the

volume of documents which would need to be reviewed by the Neutral in evaluating the merit of

those claims and asserted defenses, the Court ordered that the Parties pay their *pro rata* share of

the Neutral's fee by May 4, 2018.[5]  Id.

With respect to Plaintiffs' Motion for the Appointment of a *Pro Bono* Attorney, the Court

indicated that it would deny the request for an attorney until the record was clear that the Neutral

had been paid and that an ENE session would actually take place.  Doc. no. 25.  The Court

summarized its decision in its April 12, 2018 Memorandum Order stating that, "[i]n sum, the

Court is denying Plaintiffs' request for a free ENE process and for a free attorney at the ENE, but

is willing to reconsider appointing a *pro bono* attorney for the ENE once the docket reflects that

the payments have been made to the neutral evaluator and that the ENE will proceed."  Id.

Plaintiffs chose to wait until five days prior to the ENE session to renew their request for

a *pro bono* attorney.  Doc. no. 64.  Plaintiffs did not file a separate Motion renewing their request

for a *pro bono* attorney; rather, they embedded this request within their June 24, 2018

Reconsideration Motion.  In this compound Motion, Plaintiffs: (1) asked the Court to reconsider

one of its prior Orders related to discovery, based on a "smoking gun document," (2) accused the

---

[5] This Court extended the payment deadline to May 15, 2018, upon Plaintiffs' request.  See doc. no. 48.

Neutral of a conflict of interest; and (3) claimed Plaintiff Cailin Soloff was "afraid" to attend the ENE.[6]  Id.

Finding no intervening change in controlling law, no new evidence, previously unavailable, no necessity to correct a clear error of law or to prevent manifest injustice, on June 27, 2018, the Court denied the portion of this Motion seeking reconsideration of the Court's Prior Order.  Doc. no. 66.  The Court also denied the Plaintiffs' renewed and embedded request for a *pro bono* attorney, stating:

> Given the extremely late nature of the request and the fact that this case involves a complex matter and a lengthy factual and legal history, it would be impossible for a pro bono attorney to be first appointed, run a conflict check, and adequately learn the factual and legal intricacies of this matter in order to be able to provide sound legal advice and advocacy by June 29, 2018. However, given that the purpose of the upcoming ENE is for the Neutral to provide the Parties with an objective, impartial review of: (1) the claims asserted by Plaintiffs, as well as (2) the defenses asserted by Defendants, settlement will likely not be discussed and thus, advocacy will not be needed. The ultimate goal of the Neutral at this upcoming ENE is to convey to the Parties the strengths and weaknesses of their respective claims and defenses and invite discussion openly, in a non-confrontational forum. Therefore, the need to retain an advocate for Plaintiffs is not germane to the upcoming ENE proceedings.

Doc. no. 66.

---

[6] As to the Plaintiff Cailin Soloff's fear, Plaintiffs stated in their Motion:

> The SOLE Plaintiff scheduled to appear at that "ENE' is a twenty[-] year old, female, college student that resides in California and attends the University of Southern California. She will not be attending any "ENE" in which three, male attorneys in Pennsylvania have "conspired" to "extinguish" the claims of Plaintiffs in a Pennsylvania Federal Court. The "three" male attorneys are beginning to frighten, the "only" female college student, who is only twenty-years old and "not" an attorney.

Doc. no. 64.  Based on the above statements, regardless of whether a *pro bono* attorney was appointed by the Court to attend the ENE, Plaintiffs indicated they would not attend the ENE.

In an effort to further assist the Parties, especially Plaintiff Cailin Soloff, who implied she feared attending the ENE, the Court ordered that the Neutral retain or hire a court reporter or stenographer to attend this ENE, to record all that was said by the Neutral and the Parties. Id. The Parties were to equally bear the full cost of the attendance of the court reporter or stenographer.  Id.  The Court further ordered that the transcript of the ENE was <u>not</u> to be filed on the docket, so that it could be used solely by the Parties to enable them to accurately recall what was discussed among the Parties and Neutral during the ENE, thereby protecting the confidential nature of the ENE discussions.  Id.  In sum, the Court Reporter's presence should have provided Plaintiffs with an elevated comfort level in terms of attending the ENE.[7]

On June 29, 2018, Plaintiffs failed to attend the scheduled ENE.  Report of Neutral at doc. no. 70, at p. 1.  In his Report, the Neutral notes that neither Plaintiff appeared either in person or by telephone.  Id.  Instead, Plaintiffs filed the instant Motion for Recusal of the Trial Judge (doc. no. 67), and one day later, on June 30, 2018, Plaintiffs demanded that the Neutral refund them their share of his fee ($3,000.00) for their failure to attend the ENE and their failure to comply with a Court Order.  Report of Neutral at doc. no. 70, p. 3-4.

---

[7] In their Motion for Recusal, Plaintiffs cite to the Western District of Pennsylvania's ADR Policies and Procedures for the proposition that Court could not order the presence of a Court Reporter at their ENE. To this end, the specific policy referenced by Plaintiffs states in relevant part:

> Process Rules. The session must be informal. Rules of evidence must not apply. There must be no formal examination or cross-examination of witnesses and no recording of the presentations or discussion must be made.

See section 4.9 (B).  This is a policy not a rule of law, and therefore the Court had the right (and several sound reasons) to order a court reporter's presence at the ENE.

Like every Mediator/Neutral, because the Neutral in this case had to prepare, in advance, for the June 29, 2018 ENE session with the Parties, he received payment in advance of the session. The fee paid to him by the Parties in this case – like every other case – is for the hours and/or days of time spent by the Neutral in advance of the ENE session reading, reviewing, analyzing, conducting legal and other research, communicating with the Parties, etc. The $6,000 (total) Neutral fee in this case was not only for the Neutral's time – it was for his expertise and thirty years of experience in the area of estates and trusts law.

Despite the fact that Plaintiffs requested an ENE with an expert, that Plaintiffs were informed by this Court through a Court Order that the Neutral was performing these services at a discounted rate, and that a court reporter was to attend the ENE solely for the benefit of the Parties (in particular Plaintiffs) – no transcript would be filed on the docket – Plaintiffs exhibited blatant disregard for the Court's efforts and Orders, as well as the time the Neutral spent preparing for the ENE, by failing to attend the session.

Although the Neutral had no obligation to do so, especially in light of the fact that Plaintiffs simply chose not to attend the ENE (either in person or via telephone), the Court, *sua sponte*, ordered the Neutral to "prepare a confidential, written . . . [e]valuation of the case (not to exceed 5 pages), on or before July 13, 2018, for the parties and counsel only, in light of his extensive work on the case, and the failure of the [ENE] to proceed because of the non-attendance and non-participation of Plaintiffs at the [ENE] on June 29, 2018."

In this case, despite the lengths to which this Court has gone to assist Plaintiffs with the procedures of this District, Plaintiffs incorrectly assume that this Court is part of a conspiracy and/or is colluding with the Neutral (and the legal community at large), to strip them of the monies they believe they are entitled to receive through the Trusts and Accounts they have

placed at issue.  Doc. no. 64 and doc. no. 67.  Although this Court employs less stringent

standards when considering *pro se* pleadings, motions, and arguments than when judging the

work product of an attorney, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Plaintiffs in this case

have gone too far.


**V.      Discussion of the Motion for Recusal**

Turning now to Plaintiffs' arguments as to why this Court should recuse itself, the Court

notes there are essentially four main arguments to address.

### A.  Alleged Order Regarding the Selection of Neutral

For this argument, Plaintiffs focus on the minute entry entered by Court personnel at doc.

no. 19 of the docket in this case.  This is not an Order of Court.  Rather it is a text-only minute

entry which recaps what transpired at the Initial Case Management Conference "(ICMC") on

April 4, 2018.  As noted in this minute entry, the Court orally, during the ICMC, ordered the

Parties to attend an ENE – which was the ADR process Plaintiffs had requested during their Rule

26(f) conference, but Defendants had refused to consider.  During the ICMC, the Court also

informed the Parties that Sam Goncz, from the Pittsburgh office of the law firm Cohen &

Grigsby, was the Court's suggested Neutral, due to his expertise in the subject matter.  The

minute entry reflects this information as well.  The minute entry also summarizes the discussion

the Court had with the Parties concerning the Neutral's fee, as well as some pre-ENE discovery

matters.  After recapping the substantive matters that occurred at the ICMC, the minute entry

reads, "Signed by Judge Arthur J. Schwab on 05/22/17. . . ."

Plaintiffs make much of the fact that the "signed by" line contains a 2017 date.

Regrettably, the "signed by" line was an inadvertent clerical error.  Because this minute entry

was not an Order, there was no need for a signature. As noted, doc. no. 19 was simply a minute entry made by Court staff which included an incorrect date. Thus, Plaintiff's argument does not constitute a basis for recusal under 28 U.S.C. § 455(a) or (b)(1).

### B. Alleged Conflict of Interest of Neutral

Next, Plaintiffs contend that the Neutral had a conflict of interest, and thus, was not truly "neutral." As noted above, the Neutral selected by the Parties for the ENE in this case was Sam Goncz, who works in the Pittsburgh office of Cohen & Grigsby. Plaintiffs' claim that Attorney Lorna Scharlachen, who worked for Cohen & Grigsby's law firm in Florida until May 30, 2018, and was a defendant in the Florida Lawsuit (see footnote 3, above) had a two-day overlap with Mr. Goncz's active involvement in the instant case, and thereby creates a conflict of interest.

This Motion for Recusal is the second time that Plaintiffs have attempted to explain their conflict of interest/conspiracy theory. In their earlier-filed Motion for Reconsideration, Plaintiffs wrote as follows:

> Plaintiffs reviewed Defendants ENE answers Thursday night. Much ado had been made of the fact that Plaintiffs filed a Florida Lawsuit and a Pennsylvania Lawsuit. What was "clearly" forgotten is that not only did Plaintiffs have Pennsylvania Trusts, but Plaintiffs Father left a Florida Estate, because he was deceased. Not only were Pennsylvania and Florida lawyers commingling, those assets were also being commingled.
>
> Now, in what can only be termed an EXTRAORDINARY set of circumstances, Pro Se litigants have discovered that Pennsylvania and Florida Attorneys are "likely" commingling again to quash, each and every claim in both States. Plaintiffs are beginning to be believe there may be more to their claims than meets the eye. Some people have a tendency to forget, four fatherless children, were the receptacles, transfering [sic.] Pennsylvania assets into Florida assets and vice versa. The Court may remember that two of those children are Plaintiffs in this litigation.
>
> *       *       *

> On Thursday, Plaintiff Cailin Soloff had the day off and reviewed the
> Florida lawsuit. It was like being punched in the gut. Never fear, the
> connection was made immediately, Defendants wanted it known,
> that the lawyer Plaintiffs are suing in Florida and the Evaluator who is
> both parties,"Neutral" and a lawyer in Pennsylvania, are both individuals,
> doing business at the law firm of Cohen and Grigsby. Additionally, the
> Florida attorney we are suing is the Director of the Cohen and
> Grigsby Firm and a member of its Estates and Trusts Group while the
> Evaluator "assisting" us, in Pennsylvania, chairs the Cohen and Grigsby
> Private Wealth Client Sector, which includes its Estates and Trusts.
> Plaintiffs are doubtful, that not one person, knew about that conflict of
> interest.

Doc. no. 64 (emphasis in original).

As this Court set forth above, the Florida Lawsuit was brought by these very Plaintiffs in

the Middle District of Florida (*Cailin Soloff, et al. v. Roetzel and Andress, Cathy Reiman,*

*Esquire, Lorna Scharlachen, Esquire and Tamara Nicola, Esquire,* Civil Action No. 2:17-cv-

00426 (M.D. Fla.)), and notably, Lorna Scharlachen was a named Defendant in the Florida

Lawsuit.[8]  However, the Florida Lawsuit was dismissed upon Plaintiffs' Motion for Voluntary

Dismissal on January 30, 2018 – months before this Court held its Initial Case Management

Conference in the instant matter.

At the April 4, 2018 Initial Case Management Conference, when the Court suggested Mr.

Goncz from the Pittsburgh office of Cohen & Grigsby as a Neutral, no objections or concerns

were raised by Plaintiffs.  When the Court published its recommendations in its minute entry at

doc. no. 19 on April 4, 2018, Plaintiffs failed to raise any concerns or objections about an alleged

conflict of interest relating to the Neutral.  Plaintiffs knew as of that date that the proposed

Neutral was a member of Cohen & Grigsby, Pittsburgh; and that their dismissed Florida Lawsuit

---

[8] The *pro se* Plaintiffs in the Florida Lawsuit, which include Plaintiffs in the instant case, identified Ms.
Scharlachen as a Cohen & Grigsby attorney, and therefore, knew this information at least as of July 26,
2017 – well before selecting Sam Goncz to serve as the Neutral in this case on April 11, 2018.  See
17cv426 (M.D. Fla.), doc. no. 1.

contained a defendant who had at one time been a member of the Naples, Florida office of Cohen & Grigsby.

If Plaintiffs had genuine concerns with regard to a potential conflict of interest, they should have raised their conflict concerns much earlier than June 21, 2018. Instead, Plaintiffs raised their conflict of interest concern only after this Court entered an Order which Plaintiffs deemed to be unfavorable to them. Doc. no. 63. This timing raises doubt as to the sincerity of Plaintiffs' conflict of interest argument.

Further, Plaintiffs offer no support for the alleged bias of the Neutral, other than that he and a one-time defendant in a dismissed lawsuit both worked for the same law firm, albeit in two offices located over 1,100 miles apart. Without any evidence of bias, there can be no conflict of interest.

Finally, this argument does not supply a basis for recusal under 28 U.S.C. § 455(a) or (b)(1).

### C. Alleged Tainting of the Neutral by Defendants

Plaintiffs next argue that Defendants' attorney attempted to taint the ENE process and/or the Neutral by providing the Neutral with public court documents from the Florida Lawsuit so the Neutral would be made aware that a former employee of the Naples branch office of the Cohen & Grigsby law firm, Lorna Scharlachen, was a Defendant. This argument is akin to the argument made immediately above and will not support an argument for recusal for all of the same reasons.

### D. Court's Order Denying Plaintiffs' Reconsideration Motion (doc no. 66)

Finally, Plaintiffs contend that this Court should have granted their pre-ENE discovery Motion to Compel/Motion for Sanctions, as well as their Motion to Strike Defendants'

Affirmative Defenses.  Plaintiffs also argue that the Court should have granted their Motion to Reconsider its Order, denying them the relief they sought, due to a "smoking gun document" they produced.

The "smoking gun" document appears to be a statement from PNC Advisors showing a summary of investments as of December 29, 2000 for Meghan Ellen Holtz Soloff Agency.[9] Again, regrettably, Plaintiffs who paid their *pro rata* share of the Neutral's fee would have potentially benefitted greatly from an explanation of this document (and possibly other documents) by the Neutral. They would have also benefitted from his explanation as to the impact – or lack thereof – this and other documents may have on Plaintiffs' claims and/or Defendants' defenses.

The Court finds this document to be benign from a recusal standpoint, and notes that this document did not and does not assist the Court in reaching a conclusion different from the one it reached in its prior Orders of Court.   Accordingly, it does not form a basis for recusal.

## VI.      Conclusion

Based on the foregoing, the Motion for Recusal ([doc. no. 67](#)) was denied by the Court.

> s/Arthur J. Schwab
> Arthur J. Schwab
> United States District Judge

cc:      All ECF Registered Counsel of Record
              and
         Cailin and Dylan Soloff
         31622 Fairview Road
         Laguna Beach, CA 92651

---

[9] There is a second document which is a single page from a larger document filed with a different court. The page contains a chart which purportedly depicts the "balance" in "brokerage statements" for the years 1996 through 2008.  The document was prepared by "Petitioner" (presumably Plaintiffs in this case), and thus, is a self-serving document.