IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAILIN NICOLE SOLOFF *(Pro Se)*,
DYLAN MICHAEL SOLOFF *(Pro Se) As
Beneficiaries of The 1978 Irrevocable Deed Of
Trust Meghan Ellen Holtz Soloff, The 1994
Irrevocable Deed of Trust of Meghan Ellen
Holtz Soloff, A.M.M.T- A Family Limited
Partnership, Custodial Account of Cailin
Nicole Soloff, Custodial Account,*

17cv1500

ELECTRONICALLY FILED

        Plaintiffs,

        v.

EDWARD J. AUFMAN, WILLIAM J.
GAFFEY, AUFMAN ASSOCIATES, INC.

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgement (ECF 105), their Brief in Support of same (ECF 108), their Concise Statement of Material Facts (ECF 106), and their Appendix to their Concise Statement of Material Facts (ECF 107). Defendants' Motion requests that this Court enter judgment in their favor on all counts of the Complaint, thereby terminating this lawsuit.

Per this Court's Order dated October 10, 2018 (ECF 109), *pro se* Plaintiffs had until October 24, 2018 to file a Response to Defendants' Motion for Summary Judgement. As of this date, November 8, 2018, the Plaintiffs have failed to respond to Defendants' Motion for Summary Judgment. The Court will now grant Defendants' Motion for Summary Judgment and dismiss this case.

**I. Factual and Procedural Background**

This case began on November 17, 2017, when Plaintiffs filed a Motion for leave to proceed *in forma pauperis*, which this Court granted, noting that Plaintiffs were adult students living in the state of California. ECF 1 and ECF 4. The Complaint filed in this case alleged that Defendants "illegally deprived Plaintiffs of their property without Due Process of Law." ECF 5, p. 3. The gravamen of Plaintiffs' claims set forth in their Complaint, and the "property" to which Plaitniffs refer, concern three financial vehicles: (1) "the 1978 Trust," (2) "the 1994 Trust," and (3) "the Custodial and Coverdell Accounts."

On April 4, 2018, this Court held its initial case management conference and Plaintiff, Cailin Soloff, attended in person on her own behalf and on behalf of her brother, Plaintiff Dylan Soloff. ECF 19. During the initial case management conference, the Court ordered the Parties to file an Amended ADR Stipulation indicating their desire to attend an Early Neutral Evaluation, preferably before Sam Goncz of Cohen & Grigsby. Id. In addition, the Court further ordered the Parties to serve and file, on the docket, a formal request for production of documents on or before April 13, 2018, and any responses and objections to those requests were to be filed on or before April 23, 2018. Finally, the Court ordered any documents which existed and were responsive to a request, to be produced by a Party to the opposing Parties by April 30, 2018. Id.

Shortly thereafter, on April 10, 2018 and April 11, 2018, Plaintiffs filed a Motion seeking the Court's appointment of *a pro bono* attorney to represent them in this matter and a Motion seeking a waiver of their *pro rata* share of the Neutral's fee, respectively. ECF 22 and ECF 25. The Court denied these Motion without prejudice. ECF 26. The Court's Order reads as follows:

> This complicated and complex pending matter involves two trusts, one created in 1978 and one in 1994. The *pro se* Plaintiffs allege Defendants violated

their role(s) in connection with these trusts, and have asserted claims for conversion, fraud and/or constructive fraud, breach of fiduciary duties, professional negligence, and violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law. Plaintiffs further assert that as beneficiaries of these trusts, they have been harmed and are entitled to an accounting, the appointment of a guardian ad litem, compensatory damages, punitive damages, attorneys' fees and costs.

In order to assist the parties to obtain a "second" opinion on the relative merits of this case, the Court, with consent of the parties at the Initial Case Management Conference of April 4, 2018, and in accordance with Local Rule 16.3, directed the parties to Early Neutral Evaluation ("ENE") before a well-respected Trust and Estate attorney. This Trust and Estate attorney agreed to charge less than his regular rate. The Court directed that his total fee for the ENE would be capped at $6,000, and directed each side to pay the neutral $3,000 each "in advance." Minute Entry of 4/4/18 (doc. no. 19). Thus, for $3,000 each, the parties will receive an ENE by a subject-matter expert, at a very reasonable cost.

Presently before the Court is Plaintiffs' Motion for a Fee Waiver of Plaintiffs' Pro Rata Share of Neutral's Fees (doc. no. 25), stating that they should not have to pay their 50% of the neutral's fee. In effect they want the neutral to perform an important service to Plaintiffs for free. Given the complex nature of this case and the age of the Trusts at issue, this case will undoubtedly cost each Party much more than $3,000 if they proceed through discovery and ultimately to trial, and it is unfair to expect the neutral to work for 50% of his already reduced rate. If each Party does not pay their fair share of $3,000 to the neutral by May 4, 2018, the Court will cancel the ENE Stipulation and exempt this case from the ADR procedure. For the foregoing reasons, the Court DENIES Plaintiff's Motion for a Fee Waiver of Plaintiffs Pro Rata Share of Neutral's Fees (doc. no. 25).

The Court also DENIES, without prejudice, Plaintiffs' Motion for a Pro Bono Attorney to Represent Plaintiffs at ADR Early Neutral Evaluation (doc. no. 22). The Court will reconsider this Motion for a Pro Bono Attorney if and when the record becomes clear as to whether the ENE will proceed. In sum, the Court is denying Plaintiffs' request for a free ENE process and for a free attorney at the ENE, but is willing to reconsider appointing a pro bono attorney for the ENE once the docket reflects that the payments have been made to the neutral evaluator and that the ENE will proceed.

ECF 25.

Next, a period of time transpired wherein the Parties filed requests for documents to be produced and Motions to Compel associated with their respective requests, which led to Court Orders related to same, and ultimately, the Parties exchanged documents. See ECF 23, ECF 27,

ECF 28, ECF 29, 30, ECF 31, ECF 33, ECF 34, ECF 37, ECF 38, ECF 40, ECF 41, ECF 42, ECF 43, and ECF 45. On May 4, 2018, Plaintiffs requested an extension of time to pay their *pro rata* share of the Neutral's fee (ECF 46), which this Court granted. ECF 48.

On May 15, 2018, Plaintiffs filed an Amended Complaint (ECF 49), and on May 25, 2018, Plaintiffs filed a Motion for Sanctions/Motion to Compel alleging Defendants had failed to produce documents. ECF 50. Defendants responded to Plaintiffs' Motion to Compel (ECF 57), filed their own Motion to Compel (ECF 54), and filed an Answer to the Amended Complaint. ECF 56. Ultimately, on June 21, 2018, after all briefing on each of these matters was concluded, the Court entered an Order (ECF 63) denying Plaintiff's Motion for Sanctions/Motion to Compel, striking attachment number 1 to the Amended Complaint, and granting in part and denying in part Defendants' Motion to Compel. Again, the purpose of the Court Ordered document exchange was to assist the Parties so that all relevant documentation necessary to evaluate the Plaintiffs' claims and the Defendants' defenses could be before the highly skilled Neutral, Sam Goncz when he met with the Parties.

Three days later, on June 24, 2018, Plaintiffs filed a "Motion To Strike Defendants['] Affirmative Defenses, Reconsideration of Memorandum Order Fraud Upon The Court." ECF 64. After Defendants responded (ECF 65), the Court entered an Order on June 27, 2018 stating as follows:

> Before the Court is Plaintiffs' Motion to Reconsider its Order entered at doc. no. 63, denying Plaintiffs' Request that the Court Strike Defendants' Affirmatives Defenses. See doc. no. 64. Embedded within Plaintiffs' Motion is also a Motion that this Court appoint Plaintiffs' an attorney. [footnote omitted] Id. Defendants have file[d] a Response to this Motion. See doc.no. 65.
>
> \*      \*      \*
>
> Plaintiffs' instant Motion also requests, for a second time, that they be appointed pro bono counsel to represent them, "in Pennsylvania."

> Previously, this Court denied Plaintiffs' Motion to Waive their Pro Rata Share of the Neutral's Cost (see doc. no. 25) and simultaneously denied Plaintiffs' Motion for a Pro Bono Attorney to represent Plaintiffs at the ADR Early Neutral Evaluation (See doc. no. 22). Doc. no. 26. As the Court explained in Order no. 26, it was denying Plaintiffs' request for a free ENE process and for a free attorney at the ENE, but would be willing to reconsider appointing a pro bono attorney for Plaintiffs after payments were made to retain the Neutral Evaluator.
>
> Plaintiffs' instant Motion now requests, five days prior to the ENE, that a pro bono attorney be provided to them. Given the extremely late nature of the request and the fact that this case involves a complex matter and a lengthy factual and legal history, it would be impossible for a pro bono attorney to be first appointed, run a conflict check, and adequately learn the factual and legal intricacies of this matter in order to be able to provide sound legal advice and advocacy by June 29, 2018. However, given that the purpose of the upcoming ENE is for the Neutral to provide the Parties with an objective, impartial review of: (1) the claims asserted by Plaintiffs, as well as (2) the defenses asserted by Defendants, settlement will likely not be discussed and thus, advocacy will not be needed. The ultimate goal of the Neutral at this upcoming ENE is to convey to the Parties the strengths and weaknesses of their respective claims and defenses and invite discussion openly, in a non-confrontational forum. Therefore, the need to retain an advocate for Plaintiffs is not germane to the upcoming ENE proceedings. For all of these reasons, the Court hereby DENIES Plaintiffs' request for a pro bono attorney.
>
> Nevertheless, in an effort to assist the Parties, and Plaintiffs especially, the Court hereby ORDERS that the Neutral retain or hire a court reporter or stenographer to attend this ENE on June 29, 2018, to record all that is said by the Neutral and the Parties. The Parties will equally bear the full cost of the attendance of the court reporter or stenographer. (This cost is in addition to the Neutral fee, which has already been paid in full, equally, by both Parties.) Although this transcript will not be filed on the docket, it will assist the Parties accurately recall what is discussed by one another and the Neutral during the ENE. By having a full and complete record of this proceeding, if the Parties wish to pursue mediation or some other form of settlement prior to the trial of this matter, this transcript may prove to be valuable to the Parties' mediator.

ECF 66. The ENE was to take place on June 29, 2018, but even though the Neutral, the Defendants and their counsel, and the Court-Ordered court reporter were present at the appointed time, neither Plaintiff appeared in person or via telephone as they had previously committed.

5

The Report of the Neutral reads in relevant part, "The ENE did not take place. Defendants, their counsel and a Court Reporter attended. Plaintiff Cailin Soloff was to attend in person and Plaintiff Dylan Soloff was to attend via telephone. Neither Plaintiff attended the ENE either in person or via telephone. On 6/30/2018[,] Plaintiffs requested a refund [of their *pro rata* portion of the Neutral's fee]." ECF 70. Attached to this Report was a letter from Plaintiffs. ECF 70, p. 3-4.

Instead of attending the June 29, 2018 ENE, Plaintiffs filed a Motion for Recusal of the Trial Judge on June 29, 2018. ECF 67. The Court, despite this Motion for Recusal, first ordered the Neutral, (who, per the Report filed at ECF 70, had already expended more time than the agreed-to total payment for his services), to prepare a confidential, written Early Neutral Evaluation of the case (not to exceed 5 pages), on or before July 13, 2018, for the Parties and counsel only. The Court took this step due to the extensive work the Neutral seemingly had to perform on this case and given that the ENE failed to proceed because of the non-attendance and non-participation of Plaintiffs. The ENE filed a Notice of Compliance indicating that he had provided his evaluation of the claims and defenses of this case to the Parties (and/or their counsel) via electronic mail on July 9, 2018. ECF 88. In sum, Plaintiffs received a written evaluation of their claims and Defendants' defenses from the Neutral despite their refusal to attend the ENE.

On July 5, 2018, the Court denied Plaintiffs' Motion for Recusal (ECF 75) and on July 19, 2018, the Court filed its 23-page Opinion which painstakingly reiterated over the first 19 pages, the case history in a more detailed fashion than what is set forth above. Thus, the portion of the Opinion pertaining to why the Court refused to recuse reads in pertinent part as follows:

V. Discussion of the Motion for Recusal

Turning now to Plaintiffs' arguments as to why this Court should recuse itself, the Court notes there are essentially four main arguments to address.

A. Alleged Order Regarding the Selection of Neutral

For this argument, Plaintiffs focus on the minute entry entered by Court personnel at doc. no. 19 of the docket in this case. This is not an Order of Court. Rather it is a text-only minute entry which recaps what transpired at the Initial Case Management Conference "(ICMC") on April 4, 2018. As noted in this minute entry, the Court orally, during the ICMC, ordered the Parties to attend an ENE – which was the ADR process Plaintiffs had requested during their Rule 26(f) conference, but Defendants had refused to consider. During the ICMC, the Court also informed the Parties that Sam Goncz, from the Pittsburgh office of the law firm Cohen & Grigsby, was the Court's suggested Neutral, due to his expertise in the subject matter. The minute entry reflects this information as well. The minute entry also summarizes the discussion the Court had with the Parties concerning the Neutral's fee, as well as some pre-ENE discovery matters. After recapping the substantive matters that occurred at the ICMC, the minute entry reads, "Signed by Judge Arthur J. Schwab on 05/22/17. . . ."

Plaintiffs make much of the fact that the "signed by" line contains a 2017 date. Regrettably, the "signed by" line was an inadvertent clerical error. Because this minute was not an Order, there was no need for a signature. As noted, doc. no. 19 was simply a minute entry made by Court staff which included an incorrect date. Thus, Plaintiff's argument does not constitute a basis for recusal under 28 U.S.C. § 455(a) or (b)(1).

B. Alleged Conflict of Interest of Neutral

Next, Plaintiffs contend that the Neutral had a conflict of interest, and thus, was not truly "neutral." As noted above, the Neutral selected by the Parties for the ENE in this case was Sam Goncz, who works in the Pittsburgh office of Cohen & Grigsby. Plaintiffs' claim that Attorney Lorna Scharlachen, who worked for Cohen & Grigsby's law firm in Florida until May 30, 2018, and was a defendant in the Florida Lawsuit (see footnote 3, above) had a two-day overlap with Mr. Goncz's active involvement in the instant case, and thereby creates a conflict of interest.

This Motion for Recusal is the second time that Plaintiffs have attempted to explain their conflict of interest/conspiracy theory. In their earlier-filed Motion for Reconsideration, Plaintiffs wrote as follows:

> Plaintiffs reviewed Defendants ENE answers Thursday night. Much ado had been made of the fact that Plaintiffs filed a Florida Lawsuit and a Pennsylvania Lawsuit. What was "clearly" forgotten is that not only did Plaintiffs have

7

> Pennsylvania Trusts, but Plaintiffs Father left a Florida Estate, because he was deceased. Not only were Pennsylvania and Florida lawyers commingling, those assets were also being commingled.
> Now, in what can only be termed an EXTRAORDINARY set of circumstances, Pro Se litigants have discovered that Pennsylvania and Florida Attorneys are "likely" commingling again to quash, each and
> every claim in both States. Plaintiffs are beginning to be believe there may be more to their claims than meets the eye. Some people have a tendency to forget, four fatherless children, were the receptacles, transfering [sic.] Pennsylvania assets into Florida assets and vice versa. The Court may remember that two of those children are Plaintiffs in this litigation.
> 
> \* \* \*
> 
> On Thursday, Plaintiff Cailin Soloff had the day off and reviewed the Florida lawsuit. It was like being punched in the gut. Never fear, the connection was made immediately, Defendants wanted it known, that the lawyer Plaintiffs are suing in Florida and the Evaluator who is both parties,"Neutral" and a lawyer in Pennsylvania, are both individuals, doing business at the law firm of Cohen and Grigsby. Additionally, the Florida attorney we are suing is the Director of the Cohen and Grigsby Firm and a member of its Estates and Trusts Group while the Evaluator "assisting" us, in Pennsylvania, chairs the Cohen and Grigsby Private Wealth Client Sector, which includes its Estates and Trusts. Plaintiffs are doubtful, that not one person, knew about that conflict of interest.

Doc. no. 64 (emphasis in original).

As this Court set forth above, the Florida Lawsuit was brought by these very Plaintiffs in the Middle District of Florida (Cailin Soloff, et al. v. Roetzel and Andress, Cathy Reiman, Esquire, Lorna Scharlachen, Esquire and Tamara Nicola, Esquire, Civil Action No. 2:17-cv-00426 (M.D. Fla.)), and notably, Lorna Scharlachen was a named Defendant in the Florida Lawsuit.8 However, the Florida Lawsuit was dismissed upon Plaintiffs' Motion for Voluntary Dismissal on January 30, 2018 – months before this Court held its Initial Case Management Conference in the instant matter.

At the April 4, 2018 Initial Case Management Conference, when the Court suggested Mr. Goncz from the Pittsburgh office of Cohen & Grigsby as a Neutral, no objections or concerns were raised by Plaintiffs. When the Court published its recommendations in its minute entry at doc. no. 19 on April 4, 2018, Plaintiffs failed to raise any concerns or objections about an alleged conflict of interest relating to the Neutral. Plaintiffs knew as of that date that the proposed Neutral was a member of Cohen & Grigsby, Pittsburgh; and that

8

their dismissed Florida Lawsuit [footnote omitted] contained a defendant who had at one time been a member of the Naples, Florida office of Cohen & Grigsby.

If Plaintiffs had genuine concerns with regard to a potential conflict of interest, they should have raised their conflict concerns much earlier than June 21, 2018. Instead, Plaintiffs raised their conflict of interest concern only after this Court entered an Order which Plaintiffs deemed to be unfavorable to them. Doc. no. 63. This timing raises doubt as to the sincerity of Plaintiffs' conflict of interest argument.

Further, Plaintiffs offer no support for the alleged bias of the Neutral, other than that he and a one-time defendant in a dismissed lawsuit both worked for the same law firm, albeit in two offices located over 1,100 miles apart. Without any evidence of bias, there can be no conflict of interest.
Finally, this argument does not supply a basis for recusal under 28 U.S.C. § 455(a) or (b)(1).

C. Alleged Tainting of the Neutral by Defendants

Plaintiffs next argue that Defendants' attorney attempted to taint the ENE process and/or the Neutral by providing the Neutral with public court documents from the Florida Lawsuit so the Neutral would be made aware that a former employee of the Naples branch office of the Cohen & Grigsby law firm, Lorna Scharlachen, was a Defendant. This argument is akin to the argument made immediately above and will not support an argument for recusal for all of the same reasons.

D. Court's Order Denying Plaintiffs' Reconsideration Motion [ECF 66]

Finally, Plaintiffs contend that this Court should have granted their pre-ENE discovery Motion to Compel/Motion for Sanctions, as well as their Motion to Strike Defendants' Affirmative Defenses. Plaintiffs also argue that the Court should have granted their Motion to Reconsider its Order, denying them the relief they sought, due to a "smoking gun document" they produced.

The "smoking gun" document appears to be a statement from PNC Advisors showing a summary of investments as of December 29, 2000 for Meghan Ellen Holtz Soloff Agency.9 Again, regrettably, Plaintiffs who paid their pro rata share of the Neutral's fee would have potentially benefitted greatly from an explanation of this document (and possibly other documents) by the Neutral. They would have also benefitted from his explanation as to the impact – or lack thereof – this and other documents may have on Plaintiffs' claims and/or Defendants' defenses.

The Court finds this document to be benign from a recusal standpoint, and notes that this document did not and does not assist the Court in reaching a conclusion different from the one it reached in its prior Orders of Court. Accordingly, it does not form a basis for recusal. . . .

ECF 89.

On July 17, 2018, two days prior to this Court's entry of its July 19, 2018 Opinion related to its previously filed Recusal Order (ECF 75), Plaintiffs filed a Notice for Petition for Writ of Mandamus with the United States Court of Appeals for the Third Circuit. On July 22, 2018, Plaintiffs filed a Motion to Stay Proceedings Pending Mandamus (ECF 95) which this Court granted. ECF 102.

On August 18, 2018, the Court of Appeals denied Plaintiffs' Petition finding that they had "not demonstrated they [were] entitled to such relief." In ruling on this Petition, the Court of Appeals stated in relevant part:

> Petitioners seek the recusal of the District Judge. Recusal of a judge is required "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Petitioners claim that the District Judge should have recused himself from their case because: 1) a text-only order on the District Court docket from April 4, 2018, stated that the judge had signed that order on May 22, 2017; 2) the Court denied several of their motions; and 3) they believed that the District Judge had a personal relationship with the evaluator and that the evaluator had shared confidential information with the judge. They want another judge to review and change several decisions that the District Court has made thus far in the litigation. They also seek another ENE with a different evaluator.
> 
> First, the existence of a seemingly accidental typographical error on the District Court docket does not have any bearing on the impartiality of the District Judge. Petitioners' theories that this error somehow "backdates" the docket entry to prevent them from later appealing certain decisions have no support.
> 
> Next, petitioners' dissatisfaction with several unfavorable District Court decisions similarly does not necessitate the judge's recusal. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Review of those rulings may take place on appeal, which makes the grant of mandamus relief inappropriate. See Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 461 (3d Cir. 1996).
> 
> Finally, petitioners' concerns about their ENE evaluator and his relationship with the District Judge also lack support. Petitioners generally

> accuse the evaluator of sharing some form of confidential information with the District Judge. However, they do not explain what this information was, or when it was shared. Contrary to petitioners' allegations, at no point has the District Court ordered the evaluator to share confidential information about their case with the Court.
>
> As for the alleged conflict of interest that petitioners repeatedly reference, the District Judge merely suggested a potential evaluator to the parties for their ENE early in the litigation; petitioners and defendants voluntarily selected him to act as their evaluator. All of the information that petitioners claim informed their decision not to attend the ENE was readily available to them months before the ENE was scheduled to take place. Petitioners decided not to attend the ENE despite the Court's clear orders that the ENE would continue as scheduled. Petitioners' conjectures and decisions do not constitute a basis for recusal of the District Judge. See In re United States, 666 F.2d 690, 694 (1st Cir. 1981) (noting that a judge's recusal is not required on the basis of "highly tenuous speculation"). Accordingly, we will deny their petition.

*In re Soloff,* ___ Fed. Appx.___ , 2018 WL 4090928 (3d Cir. Aug. 28, 2018), at *2.

On September 21, 2018, Defendants filed a Motion to Lift the Stay in this matter (ECF 103), and the Court granted their Motion on September 24, 2017. ECF 104. Shortly thereafter, October 9, 2018, Defendants filed a Motion for Summary Judgment (ECF 105), and on October 10, 2018, the Court ordered Plaintiffs to respond to same by October 24, 2018. As noted above, as of today's date, November 8, 2018, Plaintiffs have failed to comply with the Court's Order.

For the reasons set forth herein, the Court will now grant the Motion for Summary Judgment and dismiss this case.

**II. Standard of Review**

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting Celotex, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

**III. Discussion**

As noted above, Plaintiffs failed to respond to the Motion for Summary Judgment filed by Defendants. Nevertheless, given the robust document productions and the abundant motions which related to the production of the documents, the Court has ample evidence to assess whether Plaintiffs have any viable causes of action against Defendants.

At the outset, this Court knew from Plaintiffs' Complaint and later, through the Amended Complaint, that Plaintiffs' claims surrounded two Trusts and possibly other financial vehicles. ECF 5 and ECF 49. This Opinion will address the claims raised by Plaintiffs with respect to each financial vehicle.

**A. The 1978 Trust (ECF 9-1)**

This document reads, "This trust agreement is made and entered into this 27th day of December, 1978 by and between Albert M. Holtz . . . "Grantor" . . . and Mildred B. Holtz[1] . . . Trustee." ECF 9-1. According to this Trust instrument, the Grantor delivered $12,000.00 in trust to the Trustee to hold in two equal parts ($6,000.00 each) for the Grantor's two beneficiaries: Meghan Ellen Holtz[2] and Tara Ellen Holtz. Id.

Section 3 of the 1978 Trust entitled "Disposition of Income" reads:

> All or any part of the income of each separate trust,
> current or accumulated, may, in the sole discretion of the
> Trustee, either be accumulated by the Trustee and capitalized
> as part of the corpus of such trust, or be distributed to or
> for the account, or used or expended for the benefit of the
> Beneficiary of such trust, at any time and from time to time
> in such amount or amounts as the Trustee, in her sole discretion,
> shall determine.

Id.

Section 4 of the 1978 Trust document, entitled "Discretionary Distribution of Corpus" reads:

> At any time and from time to time, the Trustee may
> distribute to or for the account, or use or expend for the
> benefit of the Beneficiary, all or any part of the corpus of
> her trust for any purpose or reason whatsoever as the Trustee
> in her sole discretion may determine, and, when, as and if the
> entire corpus of any trust may be so distributed, used or
> expended, that trust shall terminate. The exercise by the
> Trustee of her discretion as provided in this Section 4 and the
> exercise by her of her discretion to distribute income prior
> to the termination of a particular trust as provided in Section
> 3 hereof shall not be open to question by any person in any manner
> or proceeding whatsoever. The Trustee, in exercising her discretion

---

[1] Mildred B. Holtz is the Plaintiffs' maternal grandmother and wife of Albert M. Holtz. ECF 107-1.

[2] Plaintiffs are the adult children of Meghan Ellen Holtz and the grandchildren of Albert M. Holtz. ECF 49 and ECF 107-1.

> to distribute the income of any trust pursuant to Section 3 hereof or to distribute the corpus of any trust pursuant to this Section 4, may distribute such amounts as she shall deem necessary or advisable for such Beneficiary's maintenance, support, health (including medical, dental, hospital and nursing expenses and expenses of invalidism) and complete education (including preparatory, college and post-graduate or professional training). In the event such Beneficiary should die during the term of her trust, the Trustee is authorized, in her sole discretion, to pay part or all of such Beneficiary's funeral expenses.

Id.

The Court concludes as a matter of law that Plaintiffs were not beneficiaries to the 1978 Trust. Further the document itself precludes Plaintiffs from questioning the distribution of the funds in this trust as noted herein, "[t]he exercise by the Trustee [Mildred Holtz] of her discretion as provided in . . . Section 4 and the exercise by [Mildred Holtz] of her discretion to distribute income prior to the termination of a particular trust as provided in Section 3 . . . shall not be open to question by any person in any manner or proceeding whatsoever."

Additionally, Plaintiffs' grandfather, and Grantor of the 1978 Trust, filed an affidavit in this case indicating that none of the Defendants to the instant lawsuit were ever trustees of the 1978 Trust. ECF 107-1. Mr. Holtz does note that sometime in the 1980's Defendant Aufman Associates, Inc., "managed the assets of the 1978 Trust for [his] wife, [Mildred Holtz,] in her capacity as Trustee," but further notes that Defendant "at all times" was subject to her direction and authorization. Id. Finally, Mr. Holtz states through his affidavit that "[a]ll assets of the 1978 Trust were distributed in 2003 or before." Id.

Given all of these uncontroverted material facts, Plaintiffs have no legal basis to assert any claims against the named Defendants. Accordingly, this Court finds that Plaintiffs' claims for conversion (Count I), fraud/constructive fraud (Count II), breach of fiduciary duty (Count III), negligent performance of professional Services (Count IV), intentional infliction of

emotional distress (Count V), and violation of the Pennsylvania Consumer Protection Act (Count VI), cannot be sustained against the named Defendants with respect to the 1978 Trust. Thus, all claims asserted by Plaintiffs against Defendants with respect to the 1978 Trust will be dismissed.

**B. The 1994 Trust (ECF 9-3)**

This document is entitled "Irrevocable Deed of Trust for Meghan Ellen Holtz." The document indicates that it was formed on December 6, 1994 and Albert M. Holtz is identified as the Trustee. ECF 9-3. Albert M. Holtz submitted an affidavit in which he expressly states that he "created two trusts for the benefit of [his] daughter, Meghan Soloff" f/k/a Meghan Ellen Holtz, which he identifies as the 1978 Trust and the 1994 Trust. 107-1. Furthermore, Mr. Albert Holtz notes in his affidavit that neither Plaintiff was ever a beneficiary to either of the two trusts instruments he created for Meghan. Id.

This Court takes judicial notice of the fact that the 1994 Trust was terminated by the Court of Common Pleas of Allegheny County, Orphans Court Division, on December 2, 2014. The Court further notes that Albert Holtz though his affidavit indicates that although neither Plaintiff ever became beneficiaries of the 1994 Trust, "the Court approved distributions [he] made [from the 1994 Trust] to or for the benefit of Caitlin or Dylan [Plaintiffs herein] on the basis that [he] was satisfying Meghan's legal obligation to support her [then] minor children." ECF 107-1.

The affidavit prepared by Mr. Holtz does note that Defendant Edward Aufman served as a "special Trustee" of the 1994 Trust. Id. However. Through his affidavit, Mr. Holtz has testified that Mr. Aufman never had the right or ability to manage or control the investments or assets of the 1994 Trust." Id. Mr. Holtz further notes that "all decisions regarding any

16

distributions from the 1994 Trust were [his] decisions, in [his] capacity as Trustee, and were at all times subject to [his] direction, control and authorization."

Given all of these uncontroverted material facts, Plaintiffs have no legal basis to assert any claims against the named Defendants with respect to the 1994 Trust. Accordingly, this Court finds that Plaintiffs' claims for conversion (Count I), fraud/constructive fraud (Count II), breach of fiduciary duty (Count III), negligent performance of professional Services (Count IV), intentional infliction of emotional distress (Count V), and violation of the Pennsylvania Consumer Protection Act (Count VI), cannot be sustained against the named Defendants herein with respect to the 1978 Trust. Thus, all claims asserted by Plaintiffs against Defendants with respect to the 1994 Trust will be dismissed.

### C. The Custodial and Coverdell Accounts (ECF 9-3)

Mr. Holtz also testified in his affidavit that he and his wife created one Coverdell and one custodial account for each of their grandchildren, which includes each of the two Plaintiffs herein. 107-1. According to his affidavit, Mr. Holtz and his wife were the custodians of these accounts and Defendants managed the accounts at the direction of the custodians. Id. Mr. Holtz further indicated that Defendants never made any distributions or disbursements from any of these accounts without being directed to do so by either Mr. Holtz or his wife as the custodians of the accounts. Id.

Defendant Aufman Associates provided regular statements to the custodians and the custodians authorized monetary payments to be paid to Defendants for their services rendered in connection with these Coverdell and custodial accounts. Id. Per Mr. Holtz, the payments which the custodians authorized to Defendants were payments made within the normal course and scope of business resulting from the services Defendants provided to the custodians for the work

17

performed on the Coverdell and custodial accounts. Id. Finally, Mr. Holtz testified that at no time were any distributions or disbursements made by any of the Defendants from either of the 1978 or 1994 Trust or the Coverdell or custodial accounts at issue without prior authorization or instruction from either Mr. Holtz or his wife, Mildred Holtz. Id.

As referenced above, "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd*., 584 F.3d 575, 581 (3d Cir.2009) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–248, (1986)). Here, the Court is presented with affidavit by a third party, a blood relative to Plaintiffs, who created the financial vehicles that were established for the benefit of Plaintiffs (the Coverdell and custodial accounts) and their mother (the 1978 and 1994 Trust). As established above, Plaintiffs have no legal claim or standing to assert a cause of action with respect to either the 1978 or the 1994 Trust. Moreover, the affiant/custodian/grandfather of Plaintiffs indicates that any transactions which took place with respect to the Coverdell and custodial accounts were conducted at his instruction or the instruction of his wife who is also a custodian.

Plaintiffs did not respond to the Motion for Summary Judgement in any fashion. They, to date, did not file conflicting affidavits or present to this Court any evidence to contradict the statements by Mr. Holtz with respect to either Trust or the Coverdell or custodial accounts. Accordingly, the Court finds that the only uncontroverted, material evidence of record indicates that all of Plaintiffs' asserted claims against Defendants are meritless. And thus, the Court will enter summary judgment on behalf of the Defendants and will close this matter.

**ORDER OF COURT**

AND NOW, this 16th day of November, 2018, the Court hereby GRANTS Defendants' Motion for Summary Judgment, ECF 105, as to all claims raised by Plaintiffs in their Amended Complaint. The Court furthers instructs the Clerk of Court to CLOSE this matter.

                                                          s/ Arthur J. Schwab
                                                          Arthur J. Schwab
                                                          United States District Judge

cc:      All ECF Registered Counsel of Record